Filed 10/21/21  United Parcel Service v. Cal. OSHAB CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| UNITED PARCEL SERVICE,<br><br>Petitioner and Appellant,<br><br>v.<br><br>CALIFORNIA OCCUPATIONAL SAFETY AND HEALTH APPEALS BOARD,<br><br>Defendant and Respondent. | B308218<br><br>(Los Angeles County Super. Ct. No. 18STCP03195) |

APPEAL from an order of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge.  Affirmed.

Jackson Lewis, Nikki L. Wilson and Dylan B. Carp, for Petitioner and Appellant.

J. Jeffrey Mojcher, Chief Counsel, Aaron R. Jackson, F. Elizabeth Clarke and Andia Farzaneh, Staff Counsel, for Defendant and Respondent.

_____

After a workplace accident, real party in interest California Department of Industrial Relations, Division of Occupational Safety and Health (the Division) issued a citation to petitioner and appellant United Parcel Service (UPS) for failing to require employees to wear appropriate foot protection in violation of California Code of Regulations, title 8, section 3385, subdivision (a).[1] The citation was upheld by respondent California Occupational Safety and Health Appeals Board (the Board). UPS filed a petition for writ of mandate, which the trial court denied.

On appeal from the order denying the petition, UPS contends there was no evidence to support finding that footwear designed to provide protection from 2,500 pounds of compression would have provided protection from a container greatly exceeding that weight limit. UPS contends the excessive weight of the hazard was sufficient to rebut the presumption that footwear meeting certain standards of the American Society for Testing and Materials (ASTM) was appropriate footwear under section 3385, subdivision (a). We conclude substantial evidence supports the Board's finding that the Division met its burden to show employees were exposed to foot injuries through crushing or penetrating actions, raising a presumption that ASTM-compliant footwear was appropriate, and UPS did not rebut the presumption by demonstrating that ASTM-compliant footwear would have provided no protection or was inappropriate for other reasons. We affirm.

---

[1] All undesignated regulation references will be to title 8 of the California Code of Regulations unless otherwise stated.

# FACTUAL AND PROCEDURAL BACKGROUND

## Accident and Citation

UPS ships freight by air and operates an airport facility in Ontario, California where it loads and unloads aircraft. UPS does not provide footwear for employees who load and unload air cargo containers. UPS has a footwear policy that states proper footwear is essential to prevent injuries when items are dropped or when working close to moving equipment such as air containers. The A2 air cargo container is the third smallest air cargo container in its class, and weighs approximately 500 pounds unloaded. UPS's footwear policy required employees' shoes to have adequate foot and arch support, a non-slip sole, and be in good repair. UPS recommended "a sturdy, all-leather, well-built work shoe or boot." Loafers, tennis shoes, sandals, and tennis shoes were not acceptable styles. Some UPS employees chose to purchase and wear steel-toed shoes, but UPS did not require them.

On May 24, 2016, UPS employee Steven Sanchez was working inside an aircraft to offload air cargo containers. While he was pulling a loaded air cargo container, a butterfly lock got stuck and prevented the container from moving forward. Sanchez used his right foot to push down on the lock, but the container rolled over his foot and the lock pierced his work boot. Sanchez suffered serious injury when his toes were crushed.

On June 23, 2016, Division Associate Safety Engineer Leticia Reyes inspected the UPS workplace in Ontario. On November 23, 2016, the Division issued a citation for a serious accident as a result of UPS's failure to require employees to wear

3

appropriate foot protection in violation of section 3385, subdivision (a).  The proposed penalty was a fine of $18,000.

## Administrative Appeal

UPS appealed the citation to the Board.  A hearing was held on May 17 and August 10, 2017, before an administrative law judge (ALJ).  Sanchez was the sole witness to testify.

The Division filed a post-hearing brief.  The Division noted that a photo of an air cargo container showed it weighed 499 pounds when empty.  The Division stated, without citation to the record, that the weight of a loaded air container could reach 6,000 to 7,000 pounds.  The Division argued that the evidence showed a UPS employee was exposed to a crushing or penetrating foot injury under the applicable tests.  There was a predictable risk that the forward momentum of a 6,000 to 7,000 pound air container, without an engineering control, could roll over the foot of the employee who was pulling it.  Because of the exposure to penetrating and crushing foot injuries, UPS should require appropriate foot protection as set forth in ASTM F 2412-05 and ASTM F 2413-05.  UPS did not require or provide footwear meeting the minimum standards.

UPS filed a post-hearing brief.  UPS stated that the issues were whether section 3385, subdivision (a), required employees who move air containers to wear more protective shoes than "sturdy work shoes," and whether UPS could have reasonably anticipated prior to the injury that more protective shoes were required.  UPS determined that a sturdy work shoe was the necessary personal protective equipment for employees moving air containers, and until Sanchez's injury, there was no reason

4

for UPS to think a sturdy work shoe was inadequate. There was no evidence that UPS was aware an employee would use a foot to dislodge a butterfly lock or the potential for injury. UPS could not have anticipated exposure to the hazard. There was no notice to UPS until after the injury occurred, there was no evidence of an ongoing hazard of objects falling on employees' feet, and there was no evidence that additional foot protection could have prevented the injury.

The ALJ issued a decision on September 12, 2017, vacating the citation and setting aside the penalty. The ALJ stated the issue was whether UPS required employees to wear adequate foot protection when exposed to crushing injuries. Among other findings of fact, the ALJ found the container that Sanchez was unloading weighed about 500 pounds when empty, and approximately 6,000 to 7,000 pounds when loaded. At the time of the accident, UPS had a footwear policy designed for foot protection, and Sanchez was wearing foot protection that complied with the UPS policy.

The ALJ concluded that the Division established Sanchez was exposed to a crushing hazard while performing his job duties. There was no evidence of the type of foot protection, if any, that would be more appropriate than the protection that UPS required. However, there was no evidence that steel-toed shoes would block the forward progress of an air cargo container, not become lodged underneath a butterfly lock, or prevent impalement by a butterfly lock if the foot became stuck under it. Accordingly, the ALJ concluded that the Division failed to meet its burden to show the footwear required by UPS was not appropriate.

The Board ordered reconsideration of the ALJ's order. The Division filed a response stating the ALJ did not properly apply the decisional law. By showing employees were exposed to foot injury from crushing action, the Division presented sufficient evidence to establish a presumption that footwear meeting the standards set forth in the regulations was appropriate, and the burden shifted to UPS to demonstrate that footwear meeting the ASTM standards would not provide protection.

On November 15, 2018, the Board issued a decision after reconsideration. Among the Board's findings, it found that UPS did not require its employees to wear appropriate foot protections because UPS failed to require footwear meeting the requirements of ASTM F 2412-05 and ASTM F 2413-05. In addition, appropriate foot protection, particularly as contemplated by the ASTM standards, could have prevented or ameliorated the injuries, or the extent of injuries, suffered by Sanchez.

The Board concluded the evidence showed Sanchez was exposed to foot injuries from crushing or penetrating actions. The ALJ failed to follow Board precedent in analyzing whether the Division met its burden to show UPS failed to require appropriate foot protection. Under the burden shifting analysis adopted and applied by the Board, by showing employees were exposed to certain foot injuries, a presumption was created that footwear meeting the ASTM standards stated in section 3385, subdivision (c), was appropriate. The employer could rebut the presumption by demonstrating footwear meeting the ASTM standards would not offer protection or would be inappropriate for the workplace hazards. In this case, UPS offered no evidence that footwear meeting the ASTM standard would fail to provide protection. Even assuming a fully loaded container weighed

6

6,000 to 7,000 pounds, which was not substantiated by the evidence, the weight of an item alone was not sufficient to rebut the appropriateness of the ASTM standard. To rebut the presumption, the employer must prove the standard would provide no protection at all, showing such footwear would never be effective. There was no such evidence in the record. Therefore, the Board found UPS failed to require appropriate foot protection and did not establish a defense. The Board concluded that the Division established a serious, accident-related violation of section 3385, subdivision (a), and the penalty of $18,000 was reasonable, and therefore, the Board assessed the penalty.

## Writ of Administrative Mandamus

On December 14, 2018, UPS filed a petition seeking a writ of administrative mandamus ordering the Board to set aside its decision and issue an amended decision. In its opening brief, UPS conceded that the transcript of the administrative hearing did not contain testimony establishing the weight of a loaded container, but stated that the parties agreed a loaded container weighed 6,000 to 7,000 pounds.

UPS acknowledged that section 3385, subdivision (c)(1), requires protective footwear to meet the requirements and specifications in ASTM F 2412-05, Standard Test Methods for Foot Protection and ASTM F 2413-05, Standard Specification for Performance Requirements for Foot Protection. UPS explained that ASTM F 2413-05 classifies protective footwear as Class 50 or Class 75. Class 50 footwear is designed to withstand an impact of 50 pounds and a compression force of 1750 pounds. Class 75 footwear is designed to withstand an impact of 75 pounds and a

compression force of 2500 pounds. UPS argued that footwear meeting either classification would not have protected Sanchez from the injury in this case. The standard did not support finding employees would be protected from forces greater than 2500 pounds, such as the full containers in this case which the parties had agreed weighed between 6,000 and 7,000 pounds.

UPS argued that the cases relied on by the Board were decided prior to incorporation of the 2005 ASTM standard in current section 3385, subdivision (c), replacing the prior standard. The weight limits of the ASTM standard provide the regulated community with guidance as to which type of protective footwear would be effective. Employers reading the plain language of ASTM F 2413-05 consider the weight limits when selecting proper footwear. If employees are exposed to potential compression hazards more than twice the weight limit of the class 75 rated footwear, the employer cannot assume requiring class 75 rated footwear provides adequate protection. The ASTM standard did not ensure employees exposed to potential compression weights of 6,000 to 7,000 pounds would have appropriate foot protection when wearing the highest class of footwear referred to in the standard.

UPS argued that since employees were exposed to weight limits greater than the limits contemplated by section 3385, subdivision (c), it was the Division's burden to prove appropriate footwear under the circumstances. Based on this analysis, UPS concluded that the Division failed to meet its burden to establish the elements of the citation by a preponderance of the evidence. In support, UPS attached the version of ASTM F 2413-05 in effect at the time of the injury.

8

The Board filed an opposition on the grounds that there was no evidence in the record that fully loaded containers weighed 6,000 to 7,000 pounds, and even if they did, there was no evidence that protective footwear would not mitigate the likelihood of injury. The Board requested that the trial court take judicial notice of several decisions by the Board interpreting and applying the law, as well as ASTM standards F 2412-05 and F 2413-05, which are incorporated by reference in section 3385, subdivision (c)(1).

The Division filed a response as well. The Division argued UPS failed to produce evidence to rebut the evidentiary presumption that arose when the Division established its prima facie case.

On August 12, 2020, the trial court issued an order denying the petition for writ of mandate. The trial court also granted the Board's request for judicial notice. The court found the change in the ASTM footwear standard in March 2005 did not affect the applicability of the authorities cited by the Board, because the same burden shifting analysis was applied in the Board's decisions before and after March 2005. Under the authorities, section 3385 creates a presumption that footwear meeting the ASTM standard is appropriate, and UPS must rebut the presumption by demonstrating the ASTM standard footwear is unreasonable or inappropriate under the circumstances. By presenting evidence sufficient to demonstrate UPS employees were exposed to foot injury from falling objects, crushing, or penetrating actions, the Division presented sufficient evidence to raise a presumption that footwear meeting the standards set forth in section 3385, subdivision (c), was appropriate. There was no dispute that UPS did not require employees to wear footwear

9

that complied with the ASTM standards in section 3385, subdivision (c)(1). Therefore, the Division met its initial burden and shifted the burden to UPS to demonstrate that the ASTM standards would provide no protection or be inappropriate.

The trial court found there was no evidence in the record that air cargo containers weigh 6,000 to 7,000 pounds when loaded, and therefore, UPS could not demonstrate that the ASTM standards were inappropriate under the circumstances based on showing the weight of the object exceeded the impact and compression force of ASTM's most protective class of shoes. Even assuming the weight of the fully loaded cargo containers were a matter of record, UPS failed to address its responsibilities under the burden shifting analysis. UPS did not argue that the burden shifting interpretation was clearly erroneous. UPS made no showing that the ASTM standard footwear was unreasonable or inappropriate under the circumstances. There was no evidence in the record that compliance with the ASTM standards would provide no protection at all. The court could not rely on UPS's unsubstantiated statement that the highest class of footwear under the ASTM standard would be inappropriate merely because it exceeded the limits of the ASTM classes of protection. The trial court denied the petition. UPS filed a timely notice of appeal.

# DISCUSSION

## Standard of Review

"""Our function on appeal is the same as that of the trial court in ruling on the petition for the writ. We must determine whether based on the entire record the Board's decision is supported by substantial evidence and whether it is reasonable. [Citations.] Where the decision involves the interpretation and application of existing regulations, we must determine whether the administrative agency applied the proper legal standard. [Citation.] Since the interpretation of a regulation is a question of law, while the administrative agency's interpretation is entitled to great weight, the ultimate resolution of the legal question rests with the courts. . . . An agency's expertise with regard to a statute or regulation it is charged with enforcing entitles its interpretation of the statute or regulation to be given great weight unless it is clearly erroneous or unauthorized. [Citations.] The [Cal/OSHA Appeals] Board is one of those agencies whose expertise we must respect. [Citation.]" [Citation.] However, "[a]n administrative agency cannot alter or enlarge the legislation, and an erroneous administrative construction does not govern the court's interpretation of the statute." [Citation.]' (*Rick's Electric, Inc. v. Occupational Safety & Health Appeals Bd.* (2000) 80 Cal.App.4th 1023, 1033–1034.)" (*Overaa Construction v. California Occupational Safety & Health Appeals Bd.* (2007) 147 Cal.App.4th 235, 244–245.)

## Appropriate Footwear Required

UPS contends there was no evidence to support the finding that ASTM-compliant footwear would have prevented or minimized Sanchez's injury. We disagree with UPS's analysis.

Section 3385 states in relevant part: "(a) Appropriate foot protection shall be required for employees who are exposed to foot injuries from . . . falling objects, crushing or penetrating actions, which may cause injuries . . . . [¶] . . . [¶] (c)(1) Protective footwear for employees purchased after January 26, 2007 shall meet the requirements and specifications in American Society for Testing and Materials (ASTM) F 2412-05, Standard Test Methods for Foot Protection and ASTM F 2413-05, Standard Specification for Performance Requirements for Foot Protection which are hereby incorporated by reference." (§ 3385.)

To prove a violation of section 3385, subdivision (a), the Division must establish that (1) employees were exposed to foot injuries from conditions such as crushing or penetrating actions, and (2) the employer failed to require or provide appropriate foot protection. (*Home Depot USA, Inc. dba Home Depot #6683*, Cal/OSHA App. 1014901, Decision After Reconsideration (July 24, 2017), 2017 WL 3216573 (Ca.O.S.H.A.).) UPS does not dispute that employees were exposed to foot injuries from crushing or penetrating actions. Rather, UPS contends there is not sufficient evidence to support the finding that it failed to require or provide appropriate foot protection.

Once the Division establishes that employees are exposed to foot injuries, a presumption arises that footwear meeting the ASTM standards is appropriate. (*MCM Construction, Inc.*, Cal/OSHA App. 94-R3D5-246, Decision After Reconsideration

(Mar. 30, 2000), 2000 WL 561866 (Ca.O.S.H.A.); *Morrison Knudsen Corp.*, Cal/OSHA App. 94-R5D2-2271, Decision After Reconsideration (Apr. 06, 2000), 2000 WL 561868 (Ca.O.S.H.A.).) The burden shifts to the employer to show that footwear compliant with the ASTM standard would not provide protection or was inappropriate for other reasons. (*Morrison Knudsen Corp.*, *supra*, Cal/OSHA App. 94-R5D2-2271.) The bare fact that the weight of the hazard exceeded the limits of the standard is insufficient to rebut the appropriateness of ASTM-compliant footwear. (*Ibid.*)

In this case, the Division showed UPS employees were exposed to crushing or penetrating actions, raising a presumption that ASTM-compliant footwear was appropriate. The burden shifted to UPS to show footwear meeting the standard was inappropriate for other reasons or would not have provided protection. UPS contends that fully loaded air cargo containers exceeded the weight limit of the standard, but that bare fact does not rebut the presumption.

UPS asserts the decisions relied on by the Board were based on evidence that ASTM-compliant footwear would have provided some protection or minimized injury from objects exceeding the weight limit. This is incorrect. For example, in the decision of *In The Matter Of The Appeal Of: Zero Corporation*, Cal/OSHA App. 79-R4D5-1161, Decision After Reconsideration (Nov. 15, 1984), 1984 WL 183121 (Ca.O.S.H.A.), relied on by the Board in deciding *Morrison Knudsen Corp.*, the Board found the Division had shifted the burden to the employer and the presumption was not rebutted, even though the hazard in that case exceeded the weight limit of the footwear standard and there

13

was no evidence that footwear meeting the standard would have provided any protection or mitigation from injury.

For the first time on appeal, UPS contends that by failing to introduce evidence of the weight of a loaded air cargo container, the Division failed to establish which class of ASTM-compliant footwear was appropriate, and therefore, the citation should be reversed for failing to establish the elements. This is also incorrect. By establishing that UPS employees were exposed to foot injuries from crushing and penetrating actions, the presumption arose that ASTM-compliant footwear was appropriate. The Division did not need additionally to establish which class of footwear was appropriate. It is undisputed that UPS did not require or provide footwear meeting either classification. UPS was required to rebut the presumption with evidence showing ASTM-compliant footwear would not provide protection or was not appropriate for other reasons. UPS did not meet its burden, the evidence supports the Board's decision, and the trial court properly denied the petition for writ of mandate.

## DISPOSITION

The order denying the petition for writ of mandate is affirmed.  Respondent California Occupational Safety and Health Appeals Board is awarded its costs on appeal.


MOOR, J.


We concur:


RUBIN, P.J.


KIM, J.